IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


LUE PATRICK o/b/o
J.O., a minor child                                                    PLAINTIFF


        v.                              CIVIL NO. 08-5051


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                         DEFENDANT


### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Leu Patrick, brings this action on behalf of her minor great-grandson, J.O.,

seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of

the Social Security Administration (Commissioner) denying J.O.'s application for child's

supplemental security income (SSI) benefits under Title XVI of the Social Security Act (Act).

## I.    **Procedural Background:**

Plaintiff protectively filed the application for SSI on J.O.'s behalf on November 23, 2004,

alleging that J.O. is disabled due to attention deficit hyperactivity disorder (ADHD). (Tr. 54-56).

An administrative hearing was held on July 24, 2006, at which plaintiff and J.O. testified.  (Tr.

175-203).  Plaintiff was represented by counsel.

The ALJ, in a written decision dated September 14, 2006, found that J.O. was not

disabled, as J.O. did not have an impairment that met or was medically or functionally equal to

a listed impairment.  (Tr. 14-26).  The ALJ specifically stated she considered the Listings in

section 112.00 when making her determination.  (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on January 25, 2008. (Tr. 3-7). Subsequently, plaintiff filed this action. (Doc. 1). This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. 10, 11).

## II.    Evidence Presented:

An administrative hearing was held before the ALJ on July 24, 2006. (Tr. 175-203). Plaintiff testified J.O. was seven years of age and had completed the first grade and was promoted to the second grade. (Tr. 181). Plaintiff testified she agreed with J.O.'s first grade teacher regarding J.O.'s functioning within each domain. (Tr. 182-185). When asked if she had anything to add to J.O.'s teacher's report, plaintiff testified J.O. was just in trouble and unruly when he did not take his medication. (Tr. 183). Plaintiff testified J.O. bathes himself and puts on the clothes she sets out for him to wear. (Tr. 189). Plaintiff testified if she would let him, J.O. would sit and watch television all day. (Tr. 196-197). Plaintiff testified J.O. had nightmares once or twice a month. (Tr. 197). When asked if J.O. had medication the morning of the hearing, plaintiff testified no because she was busy and forgot to give it to him. (Tr. 197). She testified it was abnormal for her to forget. Plaintiff testified J.O. is scared to go outside by himself, scared to be in his room by himself and scared to use the bathroom at night by himself. (Tr. 197-198). Plaintiff testified J.O. was becoming unruly so she took him to the doctor who changed J.O.'s medication. (Tr.199). Since this medication change, plaintiff testified J.O. behaves longer. (Tr. 200). When asked why J.O. has not been placed in special classes, plaintiff testified J.O. is bright, he gets along and he does his class work. (Tr. 200). Plaintiff testified J.O. does not play with other children after school because they live out in the country and they

AO72A
(Rev. 8/82)

do not have neighbors with children. (Tr. 200-201).  Plaintiff testified she let J.O. spend a week

with his grandmother and mother and that J.O. spent the time fighting with the other children.

J.O. testified that he plays kick ball at school. (Tr. 192).  J.O. testified that he eats meals

at school and told the ALJ what he liked to eat.  (Tr. 193-194).  J.O. testified he did not watch

television programs on Saturday because the satellite was out.  (Tr. 194).  J.O. testified that he

liked to swim and fish.  (Tr. 195).  When asked about fighting when he was staying with his

mother, J.O. testified he did not start the fights but that some of the fights were his brother's

fault.  (Tr. 202).

The pertinent medical evidence reflects the following.  On October 14, 2004, plaintiff

reported J.O.'s school recommended J.O. be seen for hyperactivity.  (Tr. 105).  Plaintiff reported

J.O. is bright and generally does well in school but has difficulty settling down.  Plaintiff also

noted J.O. was congested and wheezing.  J.O. was diagnosed with partially treated acute sinusitis

and possible ADHD.  Dr. Kathy L. Mayhew  requested plaintiff request a Connor's Scale and

ask J.O.s teacher to fill it out.

Progress notes dated November 4, 2004, indicate Dr. Mayhew reviewed the Connor's

Scale completed and that some of J.O.'s answers were consistent with ADHD. (Tr.104).  Dr.

Mayhew recommended J.O. try a low dose of Concerta to see if it is helpful.  Plaintiff discussed

the medication with Dr. Mayhew on November 5, 2004.

Progress notes dated December 2, 2004, report J.O. was started on Concerta after being

diagnosed with ADD.  (Tr. 102).  Dr. Mayhew noted J.O. had not had any untoward side effects

and actually had been resting better.  Treatment notes indicate within a couple of days of starting

the medication, J.O.'s teacher wrote home that she immediately noticed a difference in J.O.'s

-3-

behavior.  Plaintiff reported she had not noticed any improvement in J.O.'s behavior noting he was still stubborn and did not listen.  J.O.'s grades remained the same.  Plaintiff agreed J.O. was less hyper and that he was focusing better. Dr. Mayhew diagnosed J.O. with ADHD and continued him on Concerta.

Progress notes dated January 3, 2005, report plaintiff did not feel the medication was working and that J.O. was sleeping more.  (Tr. 100, 139).  Plaintiff reported despite being on medication, J.O. was hyperactive and did not mind. Dr. Mayhew increased J.O.'s Concerta dosage.  If the dosage increase did not help, Dr. Mayhew indicated J.O. might need to be referred for more specific testing to rule out other conditions.

Progress notes dated January 6, 2005, report plaintiff called in to say J.O. was having difficulty swallowing the Concerta pills so he was switched to Metadate-CD.  (Tr. 99).

Treatment notes dated Janaury19, 2005, indicate Dr. Mayhew talked to J.O.'s teacher regarding J.O.'s behavior at school.  (Tr. 138).  Dr. Mayhew noted J.O.'s teacher reported since returning from Christmas break J.O. had been doing very well.  J.O.'s teacher reported prior to the break J.O. was having trouble focusing on his work and leaving the other children alone but since returning J.O. had been well-focused, well behaved, interested in his work and doing very well.  Dr. Mayhew noted J.O.'s teacher was unaware of the dosage increase over the break prior to reporting improvement in the classroom.  Dr. Mayhew noted plaintiff's phone had been disconnected so she would have to wait for plaintiff to call.

Progress notes dated January 24, 2005, report J.O. complained of an upper respiratory infection.  (Tr. 97, 136).  J.O. was diagnosed with tonsillitis and prescribed Amoxicillin.

AO72A
(Rev. 8/82)

Progress notes dated January 26, 2005, report plaintiff indicated J.O. was taking medication for his sore throat but that J.O.'s cough was terrible and he was having trouble breathing. (Tr. 95, 134). J.O. was diagnosed with tonsillitis-under treated and bronchitis. J.O. was given a prescription for antibiotics and plaintiff was instructed to give J.O. plenty of fluids and to use his inhaler.

On January 26, 2005, in a Childhood Disability Evaluation Form, Dr. Manley Susan, a non-examining, medical consultant, opined J.O. has "less than marked" limitations in the areas of attending and completing tasks and interacting and relating to others; and no limitations in the areas of acquiring and using information, moving about and manipulating objects, caring for himself and health and physical well-being. (Tr. 111-114).

On April 28, 2005, in a Childhood Disability Evaluation Form, Dr. S.A.Whaley, a non-examining, medical consultant, opined that J.O. has no limitations in the areas of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for himself and health and physical well-being. (Tr. 107-110).

Progress notes dated May 12, 2005, report J.O. had a fever, sore throat, cough and knot behind the ear. (Tr. 132). J.O. was diagnosed with sinusitis and tonsillitis and prescribed medication. (Tr. 132-133).

Progress notes dated August 31, 2005, report J.O. was in for a follow-up on ADD. (Tr. 130). Plaintiff reported that during J.O.'s first week of school J.O. was having trouble being hyper and unruly. This week, however, J.O. was back to normal and the teacher wrote a note home saying J.O. was doing well. J.O. had lost some weight over the summer. J.O. was

-5-

diagnosed with ADHD and maintained on medication.  Dr. Mayhew noted plaintiff would need to watch J.O.'s weight.

Progress notes dated September 20, 2005, report J.O. complained of intermittent ear pain, a sore throat, a fever and difficulty breathing.  (Tr. 128).  J.O. was diagnosed with acute sinusitis, pharyngitis and acute bronchitis.  J.O. was prescribed a Proventil inhaler and Omnicef.

Progress notes dated November 15, 2005, report J.O. complained of a sore throat, headache and a cough.  (Tr. 125).  Dr. Mayhew noted J.O. was also in for a medication review for ADHD.  Plaintiff reported J.O. had been having a lot of behavioral problems at school.  J.O. had been aggressive towards other children and constantly disruptive in spite of taking medication and enjoying good grades.  Plaintiff reported J.O.'s principal, teacher and bus driver have all reported issues.  Plaintiff reported J.O. was upset and his behavior was worse after he visited his mother.  Plaintiff reported a definite increase in J.O.'s inattentiveness and hyperactivity if he did not take his medication.  Plaintiff reported J.O. denied maltreatment during visits with his mom.  Dr. Mayhew noted when she asked J.O. questions he made good eye contact but seemed to not know what to say.  Dr. Mayhew noted J.O. did not respond to questions about why he was misbehaving or whether anyone was mistreating him.  Upon examination, Dr. Mayhew noted J.O. was a sweet little boy who appeared sad and was still and quiet. Dr. Mayhew noted J.O. did not appear either overly attached or afraid of plaintiff or her husband.  Dr. Mayhew diagnosed J.O. with uncharacteristic behavior problems, ADHD and acute sinusitis.  Dr. Mayhew opined J.O.'s misbehavior was not due to his ADHD or the medication for the ADHD.  Dr. Mayhew recommended J.O. see a counselor.  Dr. Mayhew also urged plaintiff to keep J.O.'s environment as stable as possible even if it meant preventing J.O.'s

-6-

visits with his mother.  Because J.O. was having difficulty answering questions, Dr. Mayhew asked him to write her a letter telling her everything he wanted her to know.

Progress notes dated December 15, 2005, reports J.O.'s complained of a headache, sore throat, a cough and facial/sinus pain.  (Tr. 123).  J.O was diagnosed with tonsillitis and prescribed medication.

Progress notes dated December 28, 2005, report J.O. had been coughing and had a fever for a week and then broke out in a rash that comes and goes.  (Tr. 121).  Plaintiff also reported J.O. had a lot of sinus congestion.  Upon examination, Dr. Mayhew noted J.O. was doing a lot better than the last time she saw him.  J.O. was diagnosed with an upper respiratory infection vs. sinusitis and hives or urticaria.

Progress notes dated January 30, 2006, report J.O. started feeling bad at school today. (Tr. 118).  J.O. was diagnosed with pharyngitis/tonsillitis.

On April 6, 2006, J.O. underwent an evaluation by Dr. Norman I. Snyder, of Child & Adolescent Psychiatry.  (Tr. 154).  Dr. Snyder noted J.O. was referred by Dr. Mayhew due to severe  hyperactivity and what were reported as striking mood swings.  Dr. Snyder noted after visiting with his mother J.O. was oppositional, refused direction and was described as having mood swings.  Dr. Snyder noted when J.O. was taking his medication his behavior seemed to improve but would immediately become a problem when J.O. skipped his medication or secretly spit it out.  The school bus was often a problem for J.O.  Dr. Snyder also noted it was reported that J.O. had considerable separation anxiety.  J.O. reported avoidance of certain locations or situations for fear they would precipitate anxiety including sleeping alone or being able to go to

-7-

bed before plaintiff.  J.O. himself identified his activity as a problem and noted he felt more "crabby" at the end of the day.

Upon evaluation, Dr. Snyder noted J.O. was friendly, attentive, fully communicative, well groomed and relaxed.  Dr. Snyder noted J.O.'s speech was normal in rate, volume and articulation was coherent and spontaneous.  J.O.'s mood was noted as normal with no signs of depression or mood elevation.  J.O.'s associations were noted as intact, thinking logical and thought content appropriate.  Dr. Snyder noted J.O.'s speech was fluent with no retrieval difficulty and his memory for immediate, recent and remote events was intact. J.O.'s vocabulary and fund of knowledge indicated cognitive functioning in the normal range.  Dr. Snyder noted J.O.'s social judgment was fair but somewhat impulsive.  Dr. Snyder observed no signs of anxiety or hyperactive or attentional difficulties.  Dr. Snyder reported there was a psychomotor overflow during the course of the exam. Dr. Snyder diagnosed J.O. with an Adjustment Disorder with Anxious mood and ADHD, mixed type.  He gave J.O. a global assessment of functioning score of 55.  Dr. Snyder noted psychomotor medication was reviewed and the J.O.'s family was happy with his current medication but indicated they might impose some limits on J.O.'s visitation with his mother. Dr. Snyder indicated that no further appointments would be scheduled but plaintiff could bring J.O. back for future appointments if needed.

The record also includes an assessment from J.O's teachers and plaintiff.  On January 11, 2005, Ms. Tracy Karnes, J.O.'s kindergarten teacher, completed a Teacher Questionnaire.  (Tr. 73-76).  Ms. Karnes noted J.O. had difficulty keeping his hands to himself.  Ms. Karnes indicated J.O. had no significant communication or social functioning problems noting J.O. "makes good choices for friends.  Regarding concentration persistence and pace, Ms. Karnes indicated J.O.

-8-

had no significant problem concentrating on class work or things of interest; however, J.O. had problems with working independently or staying on task and completing assignments on time which  noticeably interfered with his academic and social progress.  Ms. Karnes noted J.O. was on medication and that his problems were chronic.  Regarding behavioral functioning, Ms. Karnes noted the following behavior noticeably interfered: lies or steals monthly; is physically overactive weekly; is aggressive/fights weekly; and is childish/immature weekly.  Ms. Karnes noted J.O. did not have a significant problem with talking out of turn/interrupting, responding poorly to change, temper outbursts, being easily intimidated, handling personal needs, learning from mistakes, being defiant/disobedient or having self-confidence.   Ms. Karnes noted as an intervention to behavior problems, J.O. had a good response to daily verbal correction and special seating and monthly time out and loss of privileges.

On April 20, 2006, Ms. Melanie K. Kyle, J.O.'s first grade teacher, completed a Teacher Questionnaire.  (Tr. 86-92, 143-149).  Ms. Kyle observed no problems with J.O.'s ability to acquire and use information.  Ms. Kyle observed J.O. had some problems with attending and completing tasks.  Specifically, Ms. Kyle indicated J.O. had no problem with paying attention when spoken too directly, sustaining attention during play/sports activities, carrying out single-step instructions, carrying out multi-step instructions, organizing his own things or school materials and completing class/homework assignments.  Ms. Kyle indicated J.O. had a slight problem focusing long enough to finish assigned activity or task, refocusing to task when necessary, waiting to take turns, changing from one activity to another without being disruptive, completing work accurately without careless mistakes and working at a reasonable pace/finishing on time.  Ms. Kyle noted J.O. had an hourly obvious problem working without distracting self

-9-

or others.  She stated J.O. "is very capable of doing his classwork. He does have trouble with self control quite frequently, daily."

Regarding interacting and relating to others, Ms. Kyle noted J.O. had a daily obvious problem following rules and a weekly obvious problem expressing anger appropriately and respecting/obeying adults in authority.  (Tr. 89).  She also noted J.O. had a slight problem playing cooperatively with other children, seeking attention appropriately, relating experiences and telling stories and interpreting meaning of facial expression, body language, hints and sarcasm. Ms. Kyle indicated J.O.  sometimes had to sit in the office or  had an in-class time-out due to defiance of adults and for not following school rules.  Ms. Kyle noted J.O. had a behavior chart that helped him be aware of his behavior.

Regarding moving about and manipulating objects, Ms. Kyle had observed no problems. (Tr. 90).

Regarding caring for himself, Ms. Kyle indicated J.O. had an obvious problem handling frustration appropriately weekly; had a slight problem using good judgment regarding personal safety and dangerous circumstances weekly, and had a slight problem monthly with identifying and appropriately asserting emotional needs, responding appropriately to changes in own mood (e.g. calming self), using appropriate coping skills to meet daily demands of school environment and knowing when to ask for help.  (Tr. 91).

In a Function Report completed on November 23, 2004, plaintiff reported J.O. had no problems seeing, hearing, talking or communicating appropriately for his age.  (Tr. 66-68). Plaintiff reported J.O.'s impairments did not limit his physical abilities or his abilities to take care of his personal needs. (Tr. 70-71).  Plaintiff reported J.O. enjoyed being with other children

-10-

his age, showed affection towards other children, was affectionate towards parents, shared toys,

took turns, played "pretend" with other children, played games like tag and played video games.

(Tr. 70).  Plaintiff reported J.O.'s ability to pay attention and stay on task was limited by his

impairment and that J.O. could pay attention for about fifteen minutes.  (Tr. 71).

Plaintiff submitted medical evidence to the Appeals Council after the ALJ issued his

decision.  On October 19, 2006, J.O. was seen by Dr. Snyder again.  (Tr. 170-174).  Dr. Snyder

noted  reports that J.O. was crying and showing anxiety symptoms like not wanting to be alone.

J.O. was reported as being more aggressive at school but his grades were noted as good.

## III.   Discussion:

This court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir.

2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be

affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d

964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the

Commissioner's decision, the court may not reverse it simply because substantial evidence exists

in the record that would have supported a contrary outcome, or because the court would have

decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other

words, if after reviewing the record it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ

must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996, P.L. 104-193, revised the standards for determining childhood disability. Under the "interim" revised standards, a child is considered disabled if he has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to last for a continuous period of at least twelve months. *See* 42 U.S.C. § 1382c(a)(3)(c)(I). Effective January 2, 2001, the Commissioner promulgated "final" revised rules in response to public comments regarding the implementation of the revised rules . *See* Childhood Disability Provisions, 65 Fed. Reg. 54747 (September 11,2000)(to be codified at 20 C.F.R. Pts. 404, 416). Under these "final" rules there is now a single method, rather than four separate methods, for evaluating functional equivalence based only on six domains of functioning. 20 C.F.R. § 416.926a(b). In the present case, in the decision dated September 14, 2006, the ALJ correctly used the "final" rules in making her disability determination.

The regulations implementing the revised standards prescribe a three-step process for making the disability determination. First, the ALJ must determine whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. 416.924(b). Second, the ALJ must determine whether the child has a severe impairment or combination of impairments. *See* 20 C.F.R. 416.924(c). Third, the ALJ must determine whether the severe impairment(s) meets, medically equals, or functionally equals a listed impairment. *See* 20 C.F.R. § 416.924(d). In the present case, the ALJ found that J.O.'s claim failed at step three, as J.O. did not have an impairment that met or medically or functionally equaled a listed impairment. The ALJ specifically considered the Listings in 112.00 when making this determination. 20 C.F.R. Pt. 404, Subpt. P, App. 1 , § 112.00.

-12-

AO72A
(Rev. 8/82)

First, we find there is substantial evidence on the record to support the ALJ's determination that J.O.'s impairments do not meet or medically equal in severity any listed impairment.  *See* 20 C.F.R. Part 404, Subpt. P, App. 1, Part B.  We next address whether J.O.'s impairments are functionally equal to any listed impairment, or, in other words, whether "what [J.O.] cannot do because of [his] impairments . . . is functionally equivalent in severity to any listed impairment that includes disabling functional limitations in its criteria."  20 C.F.R. § 416.926a(a).

Functional equivalence may be established by demonstrating marked limitations in two, or extreme limitations in one of the following areas: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being.  *See* 20 C.F.R. § 416.92a(d).  The ALJ determined that the facts in this case suggest J.O. has "less than marked" limitations in the areas of attending and completing tasks and interacting and relating to others; and "no limitations" in the areas of acquiring and using information, moving about and manipulating objects, caring for oneself, and health and physical well-being.

We will now address each of the ALJ's domain determinations. With regard to acquiring and using information, the ALJ determined J.O. had no limitations.  In making this determination, the ALJ noted plaintiff's first grade school records indicate J.O. has either no specific or only slight problems in acquiring and using information. The record shows J.O. has no specific difficulty in academics.  Plaintiff testified at the hearing that J.O. was a bright child and he could read, write and spell as well as any of the other children.  (Tr. 200).  The ALJ also noted J.O. was promoted to the second grade and that he receives no special services through the

-13-

school.  Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.O. has no limitations in this area of functioning.

With regard to attending and completing tasks, the ALJ found J.O. has "less than marked" limitations.  In making this determination, the ALJ noted that while J.O. is capable of doing his class work, J.O. frequently has difficulties with self control.  Specifically, the ALJ noted the record shows J.O. has difficulty focusing on an assigned task or activity until finished, refocusing to task when necessary, waiting his turn, changing without disruption from one activity to another, completing work accurately, working without distracting self or others and working at a reasonable pace.  Despite difficulties in this area of functioning, the record shows J.O. continues to progress in an age appropriate manner.  Further, the record shows that when J.O. takes his medication his behavior is improved and he is able to complete tasks. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).  In April of 2006, Dr. Snyder observed no signs of anxiety or hyperactive or attentional difficulties. Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.O. has "less than marked" limitations in this area of functioning.

With regard to interacting and relating with others, the ALJ determined J.O. has "less than marked" limitations. The record reveals when J.O. took his medication his teachers reported J.O. was well behaved and well focused.  The record shows that J.O.'s medication had to be increased when he started to become unruly but with the medication change J.O. was more behaved.  J.O.'s teachers indicated J.O. was able to make friends and to participate in play/sport activities.  Ms. Kyle indicated that J.O. had problems with following rules and expressing anger appropriately but that sitting in the office and in-class time-outs were used as behavior

-14-

modifications.  Ms. Kyle noted J.O. had a behavior chart that also helped him be aware of his behavior.  Ms. Kyle noted J.O. did not receive and special services regarding this area of functioning.  Further, in forms completed by plaintiff she reported J.O. enjoyed being around other children his age, showed affection towards other children, was affectionate towards parents, shared toys, took turns, played "pretend" with other children, played games like tag and played video games. J.O. testified that he liked to play kick ball at recess. The record clearly shows J.O. has some difficulty in this area of functioning but with the proper use of medication J.O. appears to be progressing appropriately.  The court acknowledges treatment notes dated a little over one month after the ALJ's decision indicate J.O. appears to have had an increase in anxiety being around others after watching his mother being physically abused; however, those treatment notes also reveal J.O. had been out of medication as well.  Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.O. has "less than marked" limitations in this area of functioning.

With regard to moving about and manipulating objects, the ALJ determined J.O. has no limitations. The ALJ found that the record as a whole, as well as the testimony at the hearing, reveals J.O. has no limitations in this area of functioning.  Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.O. has no limitations in this area of functioning.

With regard to caring for oneself, the ALJ found J.O. has no limitations.  The ALJ found that the evidence in the record as well as the testimony at the hearing revealed J.O. has only slight difficulties in this area of functioning.  In making this determination the ALJ acknowledged, Ms. Kyle's report indicating J.O. had an obvious problem handling frustration

-15-

appropriately weekly; had a slight problem using good judgment regarding personal safety and dangerous circumstances weekly, and had a slight problem monthly with identifying and appropriately asserting emotional needs, responding appropriately to changes in own mood (e.g. calming self), using appropriate coping skills to meet daily demands of the school environment and knowing when to ask for help.  The ALJ noted plaintiff's testimony that J.O. could bathe himself, brush his teeth, dress himself, and ride the school bus.  Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.O. has "less than marked" limitations in this area of functioning.

With regard to health and physical well-being, the ALJ determined J.O. has "less than marked" limitations.  In making this determination, the ALJ found the evidence of record reveals J.O. is able to see, hear and speak within normal limits.  The ALJ noted J.O. takes medication daily to help with symptoms caused by his ADHD.  The ALJ noted plaintiff reported J.O. also has nightmares and that he does not like to go into his room or outside on his own.  Based on the entire evidence of record, we find substantial evidence supporting the ALJ's determination that J.O. has "less than marked" limitations in this area of functioning.

**IV.   Conclusion:**

Based on the foregoing, we recommend affirming the ALJ's decision, and dismissing plaintiff's case with prejudice.  **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

-16-

DATED this 7th day of July, 2009.

/s/    J. Marschewski
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)